**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| NOVUS, INC. and<br>PARFOIS PR, LLC,<br><br>      Plaintiffs,<br><br>                v.<br><br>DDR DEL SOL LLC. S.E.;<br>DDR ESCORIAL, LLC. S.E.;<br>DDR ISABELA, LLC. S.E;<br>DDR CAYEY, LLC. S.E;<br>DDR RIO HONDO, LLC. S.E.;<br>DDR NORTE, LLC. S.E; and<br>DDR PALMA REAL, LLC. S.E.,<br><br>      Defendants. | CIVIL NO.: 3:20-cv-01638 (PAD)<br><br><br>Re: Declaratory Judgment; Frustration of Purpose; Impossibility of Performance; Failure of Consideration; *Exceptio Non Adimpleti Contractus*; *Rebus Sic Stantibus*; Force Majeure; Unjust Enrichment; Reimbursement Action; and Breach of Contract<br><br>(**AND DEMAND FOR JURY TRIAL**) |

<u>**AMENDED COMPLAINT**</u>

**TO THE HONORABLE COURT:**

      **COME NOW** plaintiffs, Novus, Inc. ("Novus") and Parfois PR, LLC ("Parfois") (collectively, "plaintiffs"), through its undersigned attorneys and, in support of this Amended Complaint ("Complaint"), respectfully aver and pray as follows:

**I.       NATURE AND ORIGINS OF THE ACTION**

      1.      The pandemic has caused a social and financial crisis globally.  In Puerto Rico, the situation is even more complex as our society and our commercial sector were already dealing with the burden of an insolvent government, the aftermath of Hurricanes Irma and María, and the destruction from a series of earthquakes that occurred in early 2020.

      2.      To combat this crisis, unprecedented governmental restrictions have prohibited and/or severely restricted local businesses, schools, and places where people can eat, shop, and assemble. Such unparalleled changes have fundamentally altered the economic landscape in a

manner that nobody could have possibly foreseen or imagined. These unforeseen circumstances have adversely affected retail businesses, preventing businesses from opening its doors for months, and operating under strident government restrictions.  As a result, retail businesses such as Plaintiffs, experienced a dramatic reduction in sales during year 2020 and in the current year and are operating with absolute uncertainty amid unprecedented patterns of consumption.

3.     Even now, as government restrictions begin to ease for some activities and types of businesses but not others, the disease and its new variants remains virulent. The recommended guidelines for operations may provide some measure of protection, but will, radically -- perhaps indefinitely -- change the shopping experience. Indeed, shopping for apparel in physical stores will look nothing like what was contemplated by the contracting parties when they executed the lease agreements. The circumstances Plaintiffs' stores have faced are at the extreme end of foreseeability. Quite simply, when the leases were signed, no one foresaw the onset of such a calamitous disease or devastating consequences.

4.     Accordingly, Plaintiffs have been compelled to seek, *inter alia*, a declaratory judgment that, because of the COVID-19 pandemic, the resulting governmental orders and its societal effects, the lease agreements in dispute must be modified to establish a fair and equitable relationship. The unforeseen circumstances not only imposed severe and irreparable hardship on Plaintiffs, but they have also frustrated the express purpose of the lease agreements Plaintiffs hold for retail space (the "Leased Premises") and made the principal object and consideration of the lease agreements inexistent, illegal, impossible, and/or impracticable.

5.     Plaintiffs have attempted in good faith to reach an amicable solution with the lessor defendants, who are all but one affiliated with each other, for a temporary mechanism to modify the rental rates to make up for the financial inequities caused as the proximate result of the

pandemic. Said proposals have been rejected, and the lessor entities have insisted on payment of the rent, as provided in the contracts. Therefore, an actual case and justiciable controversy exists since the landlord defendants dispute that Plaintiffs' obligations under the lease agreements have been excused or should be abated. Considering this, it is necessary for this Honorable Court to intervene and establish a fair and reasonable balance between the claims of both parties.

6.    Consequently, Plaintiffs, as tenants of the commercial spaces described below, hereby seek the fair and urgent intervention of this Honorable Court to declare and decree, *inter alia*, that:  (i)  Plaintiffs' obligation to pay rent under the lease agreements (including basic rent, additional rent and/or other monetary obligations) are  fully abated and/or excused for the period when the retail business in general, including the Leased Premises, was completely shut down by executive/civil order (the "Lockdown Period");  (ii)  Plaintiffs' obligations under the lease agreements (including basic rent, additional rent and/or other monetary obligations) must be abated and modified for the period after the Lockdown Period, commencing June 1st 2020 (the "Post-Lockdown Period");  (iii) ordering landlord defendants to reimburse and give restitution to Plaintiffs for the payment of rent and other monetary obligations paid for the period that Plaintiffs were deprived of its use of the Leased Premises – the Lockdown Period; and (iv) defendant DDR Palma Real, LLC misappropriated funds by improperly withholding a portion of tenant's construction allowance and ordering such sums to be reimbursed or restituted to co-plaintiff Novus.

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000 and is between citizens of different states.

8.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the Leased Premises are within this District.

9.      An actual case or controversy has arisen under 28 U.S.C. § 2201 (Declaratory Judgment Act) concerning parties respective rights under the lease agreements. Specifically, landlord defendants dispute that Plaintiffs obligations under the lease agreements have been excused and/or abated.

### III.    THE PARTIES

*Plaintiffs*

10.      Plaintiff Novus is a corporation organized and existing under the laws of Puerto Rico, whose registration number with the Department of State is 29743. Its physical and mailing address is 655 Cubitas Street, Guaynabo, Puerto Rico 00969.

11.      Plaintiff Parfois is a limited liability company organized and existing under the laws of Puerto Rico, which has a registration number with the Department of State. Its physical and mailing address is 655 Cubitas Street, Guaynabo, Puerto Rico 00969.

12.      Novus and Parfois are companies that are in the business of operating retail stores in Puerto Rico. The former is mainly in the business of selling shoes, purses, and accessories; and the latter is in the business of selling merchandise under the private brand "Parfois."

13.      Novus, as a leading retailer in the shoe industry, operates more than sixty (60) stores in Puerto Rico, through five (5) different concepts, among which, stores that operate under the "Novus" and the "Bakers" brands.

14.      Parfois began operations in 2019 and currently operates three (3) stores in Puerto Rico.

*Defendants*

15.     Co-Defendant DDR del Sol LLC, doing business as DDR del Sol LLC, S.E. ("DDR del Sol"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

16.     Co-Defendant DDR Escorial LLC, doing business as DDR Escorial, LLC S.E. ("DDR Escorial"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

17.     Co-Defendant DDR Isabela LLC, doing business as DDR Isabela, LLC S.E. ("DDR Isabela"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

18.     Co-Defendant DDR Cayey LLC, doing business as DDR Cayey, LLC S.E. ("DDR Cayey"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

19.     Co-Defendant DDR Río Hondo LLC, doing business as DDR Río Hondo, LLC S.E. ("DDR Río Hondo"), is a limited liability company organized under the laws of the State of

Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

20.    Co-Defendant DDR Norte LLC, doing business as DDR Norte, LLC S.E. ("DDR Norte"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

21.    Co-Defendant DDR Palma Real LLC, doing business as DDR Palma Real, LLC S.E. ("DDR Palma Real"), is a limited liability company organized under the laws of the State of Delaware and authorized to conduct business in Puerto Rico. Its mailing address is c/o SITE Centers Corp., 2200 Enterprises Parkway, Beachwood, Ohio 22122. Its resident agent is C.T. Corporation System, and its mailing address is 361 San Francisco Street, Old San Juan, San Juan, PR 00901.

22.    DDR del Sol, DDR Escorial, DDR Isabela, DDR Cayey, DDR Río Hondo, and DDR Norte are entities affiliated with each other (collectively, the "Affiliated Lessors").

23.    DDR Palma Real is now owned and/or operated by Gator Investments and/or Gator Development Corp., with its address in 7850 NW 146th Street, 4th Floor Miami Lakes, FL 33016, and is a separate and independent entity, unrelated to the Affiliated Lessors.

## IV.    FACTUAL ALLEGATIONS

### A.  <u>The Lease Agreements</u>

24.     Throughout the years, Plaintiffs have executed the lease agreements listed in paragraphs 26 to 169 (jointly hereinafter, the "Lease Agreements") with the Affiliated Lessors, and DDR Palma Real.

25.     The Lease Agreements were all executed *before* the onset of the COVID-19 pandemic.

### i.  *Novus – Plaza del Sol*

26.     The Novus store at the Plaza del Sol shopping mall operates under and pursuant to a lease agreement entitled "Standard Retail Lease," executed on May 31, 1998, between Novus and BY Ventures, S.E., now DDR del Sol, as amended by the following contracts: (i) contract entitled "Extension and Modification of Lease," executed on December 30, 2009; and (ii) contract entitled "Second Extension and Modification of Lease," executed on August 30, 2018 (hereinafter, the "Lease Agreement/Novus Plaza del Sol").

27.     Pursuant to the amendment executed on August 30, 2018, the Lease Agreement/Novus Plaza del Sol is set to expire on December 31, 2024.

28.     Pursuant to Section 1.4 of the Lease Agreement/Novus Plaza del Sol, DDR del Sol is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

29.     The parties' mutual and express purpose of entering into the Lease Agreement/Novus Plaza del Sol was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

30.     For example, Article 4.1 of the Lease Agreement/Novus Plaza del Sol provides that Novus shall only use the leased premise "for the permitted use(s) expressly set forth in Section

1.1(e)(i) and for no other purpose." Section 1.1(e)(i) provides that use is limited to "[t]he sale of family footwear and related accessories, […]".

31.    Additionally, Paragraph 8 of the second amendment to the contract of reference provides as follows: "Notwithstanding any provision in the Lease to the contrary, Landlord agrees Tenant shall have the right to abate an amount equal to $6,276.55, **representing a rent abatement for the days the Shopping Center was not operational as a result of Hurricane Maria in 2017.**" (Emphasis added).

32.    From the inception of the lease until March 2020, Novus maintained and operated a retail store at the leased premise pursuant to the Lease.

33.    On April 7, 2020, Novus sent a letter to DDR del Sol informing that it would not make the lease payment for the Novus Plaza del Sol due during the *Lockdown Period.*

34.    In accordance with the Executive Orders, the Plaza del Sol shopping center remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

35.    On June 1, 2020, both the Plaza del Sol shopping center and the Novus store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

36.    Since then, the Novus/Plaza del Sol store has operated at or below a 50% of its normal capacity.

37.    On June 18, 2020, Novus sent a second letter to DDR del Sol, informing that it had suffered a **44%** reduction in sales at the Novus Plaza del Sol store, in comparison with the sales for the same period in 2019.

38.    In that same letter of June 18, Novus submitted to the consideration of DDR del Sol a proposal for a *temporary* adjustment of rent payments due to the adverse effects of the COVID-

19 pandemic, and the resulting loss of traffic in the shopping mall and, consequently, Novus Plaza del Sol decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when it was unable to operate a retail store at the Leased Premises, March 16, 2020 to March 30, 2020.

39.    On August 3, 2020, DDR del Sol sent an email to Novus, rejecting outright this proposal.

40.    On July 1, 2020, Novus sent a third letter to DDR del Sol denying that it owed any rent payments during the *Lockdown Period*.

### ii. Bakers – Plaza del Sol

41.    The Bakers store at the Plaza del Sol shopping center operates under and pursuant to a lease agreement entitled "Lease," executed on August 4, 2014, between Novus and DDR del Sol (hereinafter the "Lease Agreement/Bakers Plaza del Sol").

42.    The Lease Agreement/Novus Plaza del Sol is set to expire on October 31, 2024.

43.    Pursuant to Paragraph XXI of the Lease Agreement/Bakers Plaza del Sol, DDR del Sol is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

44.    The parties' mutual and express purpose of entering into the Lease Agreement/Bakers Plaza del Sol was to provide Bakers with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

45.    For example, Article IX the Lease Agreement/Bakers Plaza del Sol provides that Novus shall only use the leased premise "for the permitted use(s) expressly set forth in Article 1(A), Section 4 […] and for no other purpose." Section 1(A)(4) provides that use is limited to "[t]he sale of women's and girl's footwear and related accessories, […] for the display and retail

sale other items and services from time to time sold in a majority of other Bakers stores in Puerto Rico, and for no other use whatsoever."

46.    On April 7, 2020, Novus sent a letter to DDR del Sol informing that it would not make the lease payment for the Bakers Plaza del Sol during the *Lockdown Period.*

47.    In accordance with the Executive Orders, the Plaza del Sol shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

48.    On June 1, 2020, both the Plaza del Sol shopping center and the Bakers store located there reopened to the public with strict governmental safety measures as required under Executive Order OE-2020-041 and subsequent orders.

49.    Since then, the Bakers/Plaza del Sol store has operated at or below a 50% of its normal capacity.

50.    On June 18, 2020, Novus sent a second letter to DDR del Sol, informing that it had suffered a **46%** reduction in sales at the Bakers Plaza del Sol store, in comparison with the sales for the same period in 2019.

51.    In that same letter of June 18, Novus submitted to the consideration of DDR del Sol a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, the resulting loss of traffic in the shopping mall and, consequently, Bakers Plaza del Sol decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premises, March 16, 2020 to March 30, 2020.

52.    On August 3, 2020, DDR del Sol sent an email to Novus, rejecting outright this proposal.

53. On July 1, 2020, Novus sent a third letter to DDR del Sol denying that it owed any rent payments during the *Lockdown Period*.

### iii. Parfois – Plaza del Sol

54. On January 6, 2020, Parfois executed a Lease Agreement entitled "Lease" for a period of five (5) years (the "Lease Agreement/Parfois Plaza del Sol"), amended on June 20, 2020, with the sole purpose of changing the opening date to June 30, 2020.

55. Pursuant to Paragraph XXI of the Lease Agreement/Parfois Plaza del Sol, DDR del Sol is obligated to maintain Parfois in quiet use and enjoyment of the leased premises.

56. The parties' mutual and express purpose of entering into the Lease Agreement/ Parfois Plaza del Sol was to provide Parfois with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

57. For example, Paragraph IX (A) of the Lease Agreement/Parfois Plaza del Sol provides that Parfois "shall use the Premises only for the use(s) set forth in Article I(A), Section 4, of this Lease and for no other purpose." Article I(A)(4) provides that the "premises shall be occupied and used by Tenant for the purpose of conducting therein the business of women's accessories and limited fashion apparel […] for no other business or purpose whatsoever."

58. The Parfois/Plaza del Sol store has operated at or below 50% of its normal capacity.

### iv. Novus – Plaza Palma Real

59. The Novus store at the Plaza Palma Real shopping center operates under and pursuant to a lease agreement executed on September 19, 2019, between Novus and DDR Palma Real for a period of seven (7) years (the "Lease Agreement/Novus Palma Real").

60. Pursuant to Paragraph XXI of the Lease Agreement/Novus Plaza Palma Real, DDR Palma Real is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

61.     The parties' mutual and express purpose of entering into the Lease Agreement/Novus Palma Real was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

62.     For example, Article IX of the Lease Agreement/ Novus Palma Real provides that Novus shall use the premises "only for the permitted uses set forth in Article I(A), Section 4, of this Lease and for no other purpose."  Article I(A) Section 4 provides that Premises shall be "used for the display and sale at retail of family footwear and related accessories […]and for no other use whatsoever."

63.     On April 7, 2020, Novus sent a letter to DDR Palma Real informing that it would not make the lease payment during the *Lockdown Period.*

64.     In accordance with the Executive Orders, the Plaza Palma Real shopping center remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

65.     On June 1, 2020, both the Plaza Palma Real shopping center and the Novus store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

66.     Since then, the Novus/Plaza del Sol store has operated at or below 50% of its normal capacity.

67.     On June 18, 2020, Novus sent a second letter to DDR Palma Real, informing that it had suffered a **50%** reduction in sales at the Novus Palma Real store in comparison with the projected sales for this store.

68.     In that same letter of June 18, Novus submitted to the consideration of DDR Palma Real a proposal for a *temporary* adjustment of rent payments due to the adverse effects of the COVID-19 pandemic, the resulting loss of traffic in the shopping mall and, consequently, Novus

Palma Real store decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiffs were unable to operate a retail store at the Leased Premises, March 16, 2020 to March 30, 2020.

69.     On August 3, 2020, DDR Palma Real sent an email to Novus, rejecting the proposal.

70.     On July 1, 2020, Novus sent a third letter to DDR del Sol denying that it owed any rent payments during the *Lockdown Period.*

### v.   *Bakers – Plaza Palma Real*

71.     The Bakers store at the Plaza Palma Real shopping center operates under and pursuant to a lease agreement executed on September 19, 2019, between Novus and DDR Palma Real for a period of seven (7) years (the "Lease Agreement/Bakers Palma Real").

72.     Pursuant to Paragraph XXI of the Lease Agreement/Bakers Palma Real, DDR Palma Real agreed to maintain Novus in quiet use and enjoyment of the leased premises.

73.     The parties' mutual and express purpose of entering into the Lease Agreement/Bakers at Palma Real was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

74.     For example, Article XI of the Lease Agreement/Bakers Palma Real provides that Novus shall only use the leased premise "for the uses set forth in Article I (A), Section 4, of this Lease and for no other purpose." Article I (A), Section 4 provides that the premises shall be used for "the display and sale at retail of women's and girl's footwear and related accessories […] for the display and sale of other items and services from time to time sold in a majority of Bakers stores in Puerto Rico, and for no other use whatsoever."

75.     On April 7, 2020, Novus sent a letter to DDR Palma Real informing that it would not make the lease payment for the Bakers Palma Real during the *Lockdown Period.*

76.     In accordance with the Executive Orders, the Plaza Palma Real shopping center remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

77.     On June 1, 2020, both the Plaza Palma Real shopping center and the Bakers store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

78.     Since then, the Bakers/Palma Real store has operated at or below 50% of its normal capacity.

79.     On June 18, 2020, Novus sent a second letter to DDR Palma Real, informing that it had suffered a **50%** reduction in sales at the Bakers Palma Real store, in comparison with the projected sales for this store.

80.     In that same letter of June 18, Novus submitted to the consideration of DDR Palma Real a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, the resulting loss of traffic in the shopping mall and, consequently, Bakers Palma Real decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

81.     On August 3, 2020, DDR Palma Real sent an email to Novus, rejecting outright this proposal.

82.     On July 1, 2020, Novus sent a third letter to DDR Palma Real denying that it owed any rent any rent payments during the *Lockdown Period.*

### vi.  *Novus – Plaza del Norte*

83.    The Novus store at the Plaza del Norte shopping center operates under and pursuant to a lease agreement entitled "Standard Retail Lease," executed on March 1, 1993, between Novus and BY Ventures, S.E., now DDR Norte, as amended by the following contracts: (i) contract entitled "First Amendment to Lease," executed on September 15, 1997; (ii) contract entitled "Second Amendment to Lease," executed on October 23, 2007; and (iii) contract entitled "Third Amendment to Lease," executed on September 9, 2018 (hereinafter, the "Lease Agreement/Novus Plaza del Norte").

84.    Pursuant to Section 1.4 of the Lease Agreement/Novus Plaza del Norte, DDR Norte is obligated to maintain Novus in the quiet use and enjoyment of the leased premises.

85.    The parties' mutual and express purpose of entering into the Lease Agreement/Novus Plaza del Norte was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

86.    For example, Article IX of the Lease Agreement/ Novus Plaza del Norte provides that Novus shall only use the leased premise "only for the permitted use(s) and items expressly set forth in Section 1.1 (e) (i) and for no other purpose" Section 3.1 (e)(i) limits use of the Premises to "[t]he sale of family footwear and related accessories […]".

87.    Additionally, paragraph 9 of the third amendment to the contract of reference provides as follows: "Notwithstanding any provision in the Lease to the contrary, Landlord agrees Tenant shall have the right to abate an amount equal to $11,247.81**, representing a rent abatement for the days the Shopping Center was not operational as a result of Hurricane Maria in 2017**." (Emphasis added).

88.    On April 7, 2020, Novus sent a letter to DDR Norte informing that it would not make the lease payment for the Novus Plaza del Norte store during the *Lockdown Period.*

89.    In accordance with the Executive Orders, the Plaza del Norte shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

90.    On June 1, 2020, both the Plaza del Norte shopping center and the Novus store located there reopened to the public with strict governmental safety measures as required under Executive Order OE-2020-041 and subsequent orders.

91.    Since then, the Novus/Plaza del Norte store has operated at or below 50% of its normal capacity.

92.    On June 18, 2020, Novus sent a second letter to DDR Norte, informing that it had suffered a **40%** reduction in sales at the Novus Plaza del Norte premises, in comparison with the sales for the same period in 2019.

93.    In that same letter of June 18, Novus submitted to the consideration of DDR Norte a proposal for a *temporary* adjustment of rent payments due to the adverse effects the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Novus Plaza del Norte decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise March 16, 2020 to March 30, 2020.

94.    On August 3, 2020, DDR Norte sent an email to Novus rejecting outright this proposal.

95.    On July 1, 2020, Novus sent a third letter to DDR Norte categorically denying that it owed any rent payments during the *Lockdown Period*.

### vii. *Bakers – Plaza del Norte*

96.    The Bakers store at the Plaza del Norte shopping mall operates under and pursuant to a lease agreement entitled "Standard Retail Lease," executed on October 5, 1992, between Novus and BY Ventures, S.E., now DDR del Norte, as amended by the following contracts: (i) contract entitled "Extension and Modification of Lease," executed on August 27, 2008; and (ii) contract entitled "Second Amendment to Lease," executed on August 29, 2018 (hereinafter, the "Lease Agreement/Bakers Plaza del Norte").

97.    Pursuant to Section 1.4 of the Lease Agreement/Bakers Plaza del Norte, DDR del Norte is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

98.    The parties' mutual and express purpose of entering into the Lease Agreement/ Bakers Plaza del Norte was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

99.    For example, Section 4.1 of the Lease Agreement/Bakers Plaza del Norte provides that Novus shall only use the leased premise "for the permitted use(s) and items expressly set forth in Section 1.1 (e) (i) and for no other purpose." Section 1.1 (e) (i) provides that the Lease Premises shall be used for "the display and sale at retail of women's footwear and accessories […]".

100.    Additionally, Paragraph 9 of the second amendment to the contract of reference provides as follows: "Notwithstanding any provision in the Lease to the contrary, Landlord agrees Tenant shall have the right to abate an amount equal to $2,470.00, representing a rent abatement for the days the Shopping Center was not operational as a result of Hurricane Maria in 2017." (Emphasis added).

101.    On April 7, 2020, Novus sent a letter to DDR del Norte informing that it would not make the rent payment for the Bakers Plaza del Norte store during the *Lockdown Period*.

102.  In accordance with the Executive Orders, the Plaza del Norte shopping center remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

103.  On June 1, 2020, both the Plaza del Norte shopping mall and the Bakers store located there reopened to the public with to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

104.  Since then, the Bakers/Plaza del Norte store has operated at or below 50% of its normal capacity.

105.  On June 18, 2020, Novus sent a second letter to DDR del Norte, informing that it had suffered a **44%** reduction in sales at the Bakers Plaza del Norte store, in comparison with the sales for the same period in 2019.

106.  In that same letter of June 18, Novus submitted to the consideration of DDR del Norte a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Bakers Plaza del Norte store decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

107.  On August 3, 2020, DDR del Norte sent an email to Novus rejecting outright this proposal.

108.  On July 1, 2020, Novus sent a third letter to DDR del Sol denying that it owed any rent payments during the *Lockdown Period*.

### viii.  *Novus – Plaza Río Hondo*

109.  The Novus store at the Plaza Río Hondo shopping center operates under and pursuant to a lease agreement executed on October 11, 2019, between Novus and DDR Río Hondo for a period of fourteen (14) months (the "Lease Agreement/Novus Río Hondo").

110.  Pursuant to Paragraph XXI of the Lease Agreement/Novus Río Hondo, DDR Río Hondo agreed to maintain Novus in quiet use and enjoyment of the leased premises.

111.  The parties' mutual and express purpose of entering into the Lease Agreement/ Novus Plaza Rio Hondo was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

112.  For example, Article IX of the Lease Agreement/ Novus Plaza Río Hondo provides that Novus shall only use the leased premise "only for the uses set forth in Article I(A), section 4, of this Lease and no other purpose." Article I(A), section 4 provides that the "the premises shall be used for the display and sale at retail of family footwear and related accessories sold in a majority of Novus stores […] and for no other use whatsoever."

113.  On April 7, 2020, Novus sent a letter to DDR Río Hondo informing that it would not make the rent payment for the Novus Río Hondo store during the *Lockdown Period*.

114.  In accordance with the executive orders, the Plaza Río Hondo shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

115.  On June 1, 2020, both the Plaza Río Hondo shopping mall and the Novus store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

116.  Since then, the Novus/Plaza Río Hondo store has operated at or below 50% of its normal capacity.

117.  On June 18, 2020, Novus sent a second letter to DDR Río Hondo, informing that it had suffered a **52%** reduction in sales at the Novus Río Hondo store, in comparison with the sales for the same period in 2019.

118.  In that same letter of June 18, Novus submitted to the consideration of DDR Río Hondo a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Novus Rio Hondo store decline in sales.  Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

119.   On August 3, 2020, DDR Río Hondo sent an email to Novus rejecting outright this proposal.

120.  On July 1, 2020, Novus sent a third letter to DDR Río Hondo denying that it owed any rent during the *Lockdown Period.*

### ix.   *Bakers – Plaza Río Hondo*

121.  The Bakers store at the Plaza Río Hondo shopping mall operates under and pursuant to a lease agreement executed on August 4, 2014, between Novus and DDR Río Hondo for a period of ten (10) years (the "Lease Agreement/Bakers Río Hondo").

122.  Pursuant to Paragraph XXI of the Lease Agreement/ Bakers Río Hondo, DDR Río Hondo agreed to maintain Novus in quiet use and enjoyment of the leased premises.

123.  The parties' mutual and express purpose of entering into the Lease Agreement/ Bakers Plaza Río Hondo was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

124.  For example, Article IX of the Lease Agreement/Bakers Plaza Río Hondo provides that Bakers shall only use the leased premise "for the uses set forth in Article I (A) Section 4, of this Lease and for no other purpose." Article I (A) Section 4 provides that Novus shall use the Premise for "the display and sale at retail of women's and girl's footwear and related accessories, […], for the display and retail sale other items and services from time to time sold in a majority of other Bakers stores in Puerto Rico, and for no other use whatsoever."

125.  On April 7, 2020, Novus sent a letter to DDR Río Hondo informing that it would not make the lease payment for the Bakers Río Hondo store during the *Lockdown Period*.

126.  In accordance with the Executive Orders, the Plaza Río Hondo shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

127.  On June 1, 2020, both the Plaza Río Hondo shopping center and the Bakers store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

128.  Since then, the Bakers Río Hondo store has operated at or below 50% of its normal capacity.

129.  On June 18, 2020, Novus sent a second letter to DDR Río Hondo, informing that it had suffered a **60%** reduction in sales at the Bakers Río Hondo store, in comparison with sales for the same period in 2019.

130.  In that same letter of June 18, Novus submitted to the consideration of DDR Río Hondo a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Bakers Río Hondo store decline in sales. Novus also requested a credit for a portion of the rent paid for the

month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

131.    On August 3, 2020, DDR Río Hondo sent an email to Novus rejecting outright this proposal.

132.    On July 1, 2020, Novus sent a third letter to DDR Río Hondo denying that it owed any rent payments during the *Lockdown Period*.

### x. Bakers – Plaza Escorial

133.    The Bakers store at the Plaza Escorial shopping center operates under and pursuant to a lease agreement originally executed on September 23, 2015, between Blanco-Vélez Stores, Inc. and DDR Escorial, as modified through assignment agreement entitled "Assignment, Assumption and Consent Agreement," executed on December 1, 2016 (jointly, the "Lease Agreement/Bakers Escorial").

134.    Pursuant to Paragraph XXI of the Lease Agreement/Bakers Escorial, DDR Escorial agreed to maintain Novus in quiet use and enjoyment of the leased premises.

135.    The parties' mutual and express purpose of entering into the Lease Agreement/Bakers at Plaza Escorial was to provide Bakers with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

136.    For example, Article IX of the Lease Agreement/ Bakers at Plaza Escorial provides that Bakers shall only use the leased premise "for the uses set forth in Article 1(A), Section 4, of this Lease and for no other purpose."  Article 1(A), Section 4 limits the use of the premise for "the display and sale at retail of women's and girl's footwear and related accessories," […] for the display and retail sale other items and services from time to time sold in a majority of other Bakers stores in Puerto Rico, and for no other use whatsoever."

137.    On April 7, 2020, Novus sent a letter to DDR Escorial informing that it would not make the lease payment for the Bakers Escorial store for any period during which the lockdown ordered by the Governor of Puerto Rico was extended by executive order, as a result of the impact of the pandemic.

138.    In accordance with the Executive Orders, the Plaza Escorial shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

139.    On June 1, 2020, both the Plaza Escorial shopping mall and the Bakers store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

140.    Since then, the Bakers/Plaza Escorial store has operated at or below 50% of its normal capacity.

141.    On June 18, 2020, Novus sent a second letter to DDR Escorial, informing that it had suffered an **18%** reduction in sales at the Bakers Escorial store, in comparison with the sales for the same period in 2019.

142.    In that same letter of June 18, Novus submitted to the consideration of DDR Escorial a proposal for a *temporarily* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Novus Plaza del Store decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

143.    On August 3, 2020, DDR Escorial sent an email to Novus rejecting outright this proposal.

144.    On July 1, 2020, Novus sent a third letter to DDR Escorial denying that it owed any rent payments during the *Lockdown Period*.

### xi. *Bakers – Plaza Isabela*

145.    The Bakers store at the Plaza Isabela shopping center operates under and pursuant to a lease agreement entitled "Standard Retail Lease," executed on July 28, 1994, between Novus and Plaza Isabela Development, S.E., now DDR Isabela, as amended by the following contracts: (i) contract entitled "Extension and Modification of Lease," executed on September 13, 2005; and (ii) contract entitled "Second Extension and Modification of Lease," executed on July 31, 2014 (hereinafter, the "Lease Agreement/Bakers Isabela").

146.    Pursuant to Section 1.4 of the Lease Agreement/Bakers Isabela, DDR Isabela is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

147.    The parties' mutual and express purpose of entering into the Lease Agreement/Bakers Plaza Isabela was to provide Novus with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

148.    For example, Section 4.1 of the Lease Agreement/ Bakers at Plaza Isabela provides that Novus shall only use the leased premise "for the permitted use(s) and items expressly set forth in Section 1.1 (e) (i) and for no other purpose." Section 1.1(e) (i) provides that the premise shall be used for the "display and sale at retail of women's footwear and accessories and incidental thereto other items and services from time to time sold in other Bakers stores in Puerto Rico…"

149.    On April 7, 2020, Novus sent a letter to DDR Isabela informing that it would not make the lease payment for the Bakers Plaza Isabela store during the *Lockdown Period.*

150.    In accordance with the Executive Orders, the Plaza Isabela shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

151.    On June 1, 2020, both the Plaza Isabela shopping mall and the Bakers store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

152.    Since then, the Bakers/Plaza Isabela store has operated at or below 50% of its normal capacity.

153.    On June 18, 2020, Novus sent a second letter to DDR Isabela, informing that it had suffered a **34%** reduction in sales at the Bakers Plaza Isabela store, in comparison with the sales for the same period in 2019.

154.    In that same letter of June 18, Novus submitted to the consideration of DDR Isabela a proposal for a *temporary* adjustment of rent payments due to the adverse effects of the COVID-19 pandemic, resulting loss of traffic in the shopping mall and, consequently, Bakers Plaza Isabela store decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premise, March 16, 2020 to March 30, 2020.

155.    On August 3, 2020, DDR Isabela sent an email to Novus rejecting outright this proposal.

156.    On July 1, 2020, Novus sent a third letter to DDR Isabela denying that it owed any rent payments during the *Lockdown Period*.

### xii. Bakers – Plaza Cayey

157.    The Bakers store at the Plaza Cayey shopping center operates under and pursuant to a lease agreement entitled "Standard Retail Lease," executed on October 5, 1992, between Novus and Cayey Developers, S.E., now DDR Cayey, as amended by the following contracts: (i) contract entitled "First Amendment to Lease," executed on December 1, 2012; and (ii) contract

entitled "Second Amendment to Lease," executed on August 7, 2018 (hereinafter, the "Lease Agreement/Bakers Cayey").

158.    Pursuant to Section 1.4 of the Lease Agreement/Bakers Cayey, DDR Cayey is obligated to maintain Novus in quiet use and enjoyment of the leased premises.

159.    The parties' mutual and express purpose of entering into the Lease Agreement/Bakers Plaza Cayey was to provide Bakers with commercial retail space suitable for the operation of a retail store selling footwear and accessories.

160.    For example, Section 4.1 of the Lease Agreement/ Bakers Plaza Cayey provides that Bakers shall only use the leased premise "only for the permitted use(s) expressly set forth in Section 1.1 (e) (i) and for no other purpose." Section 1.1 (e) (i) provides that the use shall be for the "[t]he sale of family footwear and related accessories, […] Tenant may change its use concept to any other concept being operated by Tenant provided that such changed use is substantially similar to the aforementioned use. […]".

161.    Additionally, Paragraph 9 of the second amendment to the contract of reference provides as follows: "Notwithstanding any provision in the Lease to the contrary, Landlord agrees Tenant shall have the right to abate an amount equal to $4,765.80, representing **a rent abatement for the days the Shopping Center was not operational as a result of Hurricane Maria in 2017."** (Emphasis added).

162.    On April 7, 2020, Novus sent a letter to DDR Cayey informing that it would not make the lease payment for the Bakers Cayey store during the *Lockdown Period.*

163.    In accordance with the Executive Orders, the Plaza Cayey shopping mall remained closed from March 16, 2020, to May 31, 2020, both dates inclusive.

164.    On June 1, 2020, both the Plaza Cayey shopping mall and the Bakers store located there reopened to the public with strict governmental safety measures as required Executive Order OE-2020-041 and subsequent orders.

165.    Since then, the Bakers/Plaza Cayey store has operated at or below 50% of its normal capacity.

166.    On June 18, 2020, Novus sent a second letter to DDR Cayey informing that it had suffered an __18%__ reduction in sales at the Bakers Plaza Cayey store, in comparison with the sales for the same period in 2019.

167.    In that same letter of June 18, Novus submitted to the consideration of DDR Cayey a proposal for a *temporary* adjustment of rent payments due to the adverse effects that the COVID-19 pandemic resulting loss of traffic in the shopping mall and, consequently, Bakers Plaza Cayey del Store decline in sales. Novus also requested a credit for a portion of the rent paid for the month of March 2020, when Plaintiff was unable to operate a retail store at the Leased Premises, March 16, 2020 to March 30, 2020.

168.    On August 3, 2020, DDR Cayey sent an email to Novus rejecting outright this proposal.

169.    On July 1, 2020, Novus sent a third letter to DDR Cayey denying that it owed any rent payments during the *Lockdown Period*.

## B.  COVID-19

170.    At or around March 2020, the COVID-19 pandemic struck Puerto Rico. Consequently, on March 12, 2020, the Government of the Commonwealth of Puerto Rico, Hon. Wanda Vázquez Garced ("Governor of Puerto Rico") issued Executive Order Num. OE-2020-020 declaring a state of emergency in Puerto Rico.

171.    Immediately thereafter, on March 15, 2020, the Governor of Puerto Rico, through Executive Order OE-2020-023, issued a mandatory "shelter-in-place" order requiring all Puerto Rico residents to remain in their residence or place of lodging. Executive Order OE-2020-023 established a 7p.m.-5a.m. curfew and required the complete and immediate lockdown of "all non-essential businesses".

172.    Retail stores and shopping centers are non-essential businesses under this Executive Order.

173.    Due to the ongoing state of emergency caused by the COVID-19 pandemic, the Governor of Puerto Rico periodically issued subsequent executive orders, maintaining the "shelter-in-place" order, curfew, and closure of non-essential business up until Executive Order EO-2020-041 beginning on May 26, 2020.

174.    Executive Order EO-2020-041 was scheduled to begin on May 26, 2020 until June 15, 2020, allowing "non-essential business" to re-open on June 1st, 2020 with strict governmental restrictions.

175.    Executive Order EO-2020-041 and subsequent Orders issued by the Governor of Puerto Rico[1] since May 2020 to the present have required non-essential businesses such as retail stores to operate at or below 50%[2] of the premise's maximum capacity, as defined in Puerto Rico Building Code 2018.

176.    On June 1, 2020 Plaintiffs were permitted to, and in fact did re-open its retail business at the Leased Premises subject to governmental COVID-19 restrictions and social distancing regulations.

---

[1] Hon. Pedro Rafael Pierluisi Urrutia took office on January 2, 2021, as the Governor of Puerto Rico.
[2] At times dropping to a low 25%.

177.    Executive Orders have also imposed curfew orders limiting business hours at the Leased Premises contrary to the parties' express understandings in the Lease Agreements.

178.    During the *Lockdown Period*, March 16, 2020 to June 1, 2020, shopping centers were forced to shut down operations to comply with governmental orders and guidelines imposed in response to COVID-19 pandemic.

179.    After June 1, 2020 to the present, i.e., the *Post Lockdown Period*, because of COVID-19 and government restrictions in response, Plaintiffs' retail stores at the Leased Premises have been operating at only a marginal capacity, contrary to the parties' fundamental understanding, purpose, and expectation at the time the Lease Agreements were executed.

180.    Plaintiffs, like other retailers in Puerto Rico, have also been required to ensure that customers and staff remain distanced at all times by at least six feet of separation while in the Leased Premises.

181.    Governmental social distancing restrictions on retail, entertainment, public transportation, and indoor spaces have also resulted in a dramatic decrease in the number of visitors to the shopping centers where the Leased Premises are located.

182.    COVID-19, governmental restrictions and its societal effects resulted in an unforeseeable and industry-altering contraction in the retail market.[3]

183.    The effects of COVID-19 on the retail market show no signs of abating anytime soon.

184.    There is great uncertainty as to when, and if, governmental restrictions due to COVID-19 and social distancing guidelines will be lifted. Experts have held that the risk of

---

[3]    *See*    https://www2.deloitte.com/us/en/pages/consumer-business/articles/retail-recession.html    (last    accessed 3/22/2021) (""Retail sales plunged 20 percent from February to April, with very large declines in categories like clothing and accessory stores (down 89 percent) and department stores (down 45 percent)").

infection and transmission does not drop to zero with the vaccine, but when combined with other measures, masks and social distance.

185.    Although COVID-19 vaccines were approved by the Federal Drug Administration during late 2020 there is still great uncertainty particularly on the durability of the protection.

186.    There have also been constant reports involving variants of the COVID-19 virus and vaccine protection to such variants is uncertain.

187.    Vaccination is still not widely available. In Puerto Rico availability is limited to individuals aged 60 plus and age 35 plus with chronic conditions.

188.    Vaccination for children is not available and has been reported that it will not occur until 2022.

189.    For the foreseeable future governmental restrictions due to COVID-19 for social distancing requirements will continue to impose a reduction in the amount of customer foot traffic that is permitted to pass through shopping centers and retail stores.

## C.  COVID-19 and the Lease Agreements

190.    Until March 15, 2020, Plaintiffs fully complied with their contractual obligations under the Lease Agreements.

191.    The COVID-19 pandemic, governmental restrictions, and its societal effects have adversely impacted the capacity of each Plaintiff and of each of the Defendants to comply with fundamental obligations under the Lease Agreements.

192.    Consequently, during the *Lockdown Period* the Affiliated Lessors and DDR Palma Real were legally and civilly prevented from fulfilling their contractual obligation of guarantying Plaintiffs the quiet use and enjoyment of the Leased Premises for the use specified and as contemplated by the parties' Lease Agreements – for the use of retail stores.

193.    As a result of defendants' inability to comply with their obligation, Plaintiffs were unable to use, enjoy or commercially exploit the Leased Premises for seventy-seven (77) days during the *Lockdown Period.*

194.    But for the ability to operate a retail store at the Leased Premises, in accordance with the operating rules and regulations of the shopping center, Plaintiffs would not have entered into the Lease Agreements, and Plaintiffs' ability to operate a retail store at the Leased Premises was the sole consideration Plaintiffs received in exchange for entering into the Lease Agreements.

195.    As a result of COVID-19, governmental restrictions, and its societal effects, all of which were unforeseeable at the time the Lease Agreements were executed, and which resulted from no act of either party, the parties' intended use of the Leased Premises was frustrated, became impossible, illegal, and impracticable during the *Lockdown Period*. Specifically, Plaintiffs were forced to suspend all retail operations at the Leased Premises, frustrating the purpose of the Lease Agreements. Defendants' compliance with its fundamental obligation Plaintiffs' performance under the Lease Agreements became impossible, and Plaintiffs were consequently deprived of the use and enjoyment of the Lease Premises, which was sole reason for which they agreed to pay rent consideration they received in exchange for entering into the Lease Agreements and the reason behind the rent payments.

196.    As a result of COVID-19, governmental restrictions, and its societal effects, all of which were unforeseeable at the time the Lease Agreements were executed, and which resulted from no act of either party, Plaintiffs have not been able to use the totality of the Leased Premises to conduct a retail business as promised under the Lease Agreements during the *Post Lockdown Period* experiencing a substantial decline in sales. Such a result is inequitable and damages Plaintiffs in part because the expectation that Plaintiffs would be able to use the totality of the

Lease Premises to conduct its business was the basis for the parties' negotiations and calculations at the time of contracting concerning Plaintiffs' obligation to pay rent under the Lease Agreements. At the time the Lease Agreements were executed the shopping centers where the Leased Premises are located were a solidly trafficked area justifying the rent agreed upon in the Lease Agreements.

197.    During the *Post Lockdown Period* Plaintiffs have made monthly payments to Affiliated Lessors and DDR Palma Real using a formula based on the payment of a rental rate as established in the Lease Agreements proportionate to current sales (in comparison with sales of year 2019). The proposed rent payment adjustment formula, is attached hereto and made part hereof as **Exhibit A.**

198.    With the sole exception of Affiliated Lessors and DDR Palma Real, other Plaintiffs' shopping center landlords have agreed to modify Plaintiffs' rent obligations using the formula a model based on month-to-month sales as shown in **Exhibit A**.

199.    Despite Plaintiffs' reasonable proposal and efforts to reach a fair compromise, Affiliated Lessors have wrongly demanded from Plaintiffs the full amount of monetary obligations as established in the Lease Agreements for the *Lockdown Period*, and refused any rent relief or abatement for the *Post-Lockdown Period,* threatening with lawsuits. Affiliated Lessors' intentions are evident from their letter of collection served on Plaintiffs on October 8, 2020, which is attached and made a part of this Complaint as **Exhibit B.**

200.    Although parties have expressed a reciprocal interest in maintaining their lessor-lessee relationship, an actual and justiciable controversy exists since Affiliated Lessors and DDR Palma Real dispute whether Plaintiffs' obligations under the Lease Agreements are abated and/or otherwise excused.

201.    Contrary to some of the legal precedents that landlord defendants seem to rely on, the *force majeure* clause on the Lease Agreements **do not** include a remedy for the controversies existing between the parties, and do not bar the claims and civil remedies herein requested. Thus, they must be resolved in accordance with civil and/or equitable remedies pursuant to the provisions of the Civil Code of Puerto Rico and its interpretative case law.

## V.    FIRST CAUSE OF ACTION
### (Declaratory Judgment, Frustration of Purpose – *Lockdown Period*)

202.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 201 of this Complaint as though fully set forth herein.

203.    Plaintiffs' ability to operate a retail store at the Leased Premises was the parties' mutual purpose in entering into the Lease Agreements, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Plaintiffs would not have entered into the Lease Agreements. Without Plaintiffs' ability to use, enjoy and commercially exploit the Leased Premises for a retail store, the transaction between the parties that resulted in the Lease Agreements makes no sense.

204.    During the *Lockdown Period*, the COVID-19 pandemic, governmental restrictions, and societal effects prevented Plaintiffs from occupying the Leased Premises and fully operating its business at the Leased Premises, which were the principal if not the sole purpose contemplated under the Lease Agreements.

205.    When Plaintiffs were forced to suspend all retail operations at the Leased Premises during the *Lockdown Period*, the purpose of the Lease Agreements was frustrated and impossible to effectuate due to no fault of the Plaintiffs.

206.    Affiliated Lessors and DRR Palma Real through their acts, amendments to various Lease Agreements, and representations during the course of the Parties' relationship have

33

acknowledged that Plaintiffs' right to operate a retail store is the essential element of the Lease Agreements.

207.    For example, various lease agreements have a particular clause abating Plaintiff's monetary obligations after hurricane Maria for the time the shopping centers were not operational. Similarly, post hurricane María, the parties negotiated and agreed on a rent abatement involving other Lease Premises.

208.    Parties' relationship and past dealings show that he parties true intentions have always been to suspend and/or discharge Plaintiffs' monetary obligations when deprived of their right to use and operate a retail store in the Leased Premises, as contemplated under the Lease Agreements.

209.    The sudden suspension of retail operations at the Leased Premises was unforeseeable and not contemplated by the parties at the time the Lease Agreements were executed.

210.    The COVID-19 pandemic, governmental restrictions, societal effects, and the resulting economic ramifications therefrom, were not caused by Plaintiffs, or by any of Plaintiffs' acts or omissions.

211.    As a result of the foregoing, the suspension of Plaintiffs' right to use, occupy and operate a retail store during the *Lockdown Period* is a frustration of the Lease Agreements' purpose, and consequently all of Plaintiffs' monetary obligations (including all rent, additional rent and/or other monetary and/or non-monetary obligations) are fully abated and/or excused.

212.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been abated and/or excused. Plaintiffs' lack an adequate remedy at law.

213.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that: i) the spirit, essence and purpose of the Lease Agreements was frustrated during the *Lockdown Period*, ii) that Plaintiffs' obligations under the Lease Agreements during said period, including all rental payments, are fully abated, excused, and/or discharged, and iii) defendants' claims that Plaintiffs have breached the Lease Agreements by not making rent payments during the *Lockdown Period* is, as a matter of fact and/or law, wrong.

## VI.    SECOND CAUSE OF ACTION
### (Declaratory Judgment, Failure of Consideration – *Lockdown Period*)

214.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 213 of this Complaint as though fully set forth herein.

215.    The Parties would not have entered into the Lease Agreements had they known that Plaintiffs would have been unable to operate a retail apparel store at the Lease Premises, and Plaintiffs' ability to use the Leased Premises as a retail apparel store was the sole consideration Plaintiffs received under the Lease.

216.    Article 1213 of the Civil Code lists the requirements of the contract and establishes that "[t]here is no contract unless the following requirements concur: (1) Consent of the contracting parties; (2) Object of the contract; (3) Cause of the obligation that is established." Laws of P.R. Ann., Tit. 31 § 3391.

217.    The Lease Agreements permit, and requires, Plaintiffs to use and enjoy the Leased Premises and operate its retail business in a particular manner. Specifically, the Lease Agreements limits Plaintiffs' permitted use of the Leased Premises to conduct a retail business.

218.    As consideration for the Lease Agreements, Affiliated Lessors and DDR Palma Real are required to permit and contractually allow that the Leased Premises be used as specified and as contemplated by the Lease Agreements.

219.    Plaintiffs agreed to pay rent and other monetary obligations in the expectation that it would be able to operate the Leased Premises for its retail business, this expectation was a fundamental consideration for the rent payments.

220.    The COVID-19 pandemic, governmental restrictions, and societal effects completely deprived Plaintiffs of the beneficial use and occupancy of the Leased Premises during the *Lockdown Period*. As such, Plaintiffs have been deprived of the benefit of its bargain. Accordingly, there has been a failure of consideration.

221.    As a result of the foregoing, Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* (including all rent, additional rent and/or other monetary and/or non-monetary obligations) are fully abated and/or excused.

222.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been excused. Plaintiffs' lacks an adequate remedy at law.

223.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that: i) payment obligations under the Lease Agreements are fully discharged during the *Lockdown Period* on failure of consideration, and ii) that defendants' claims that Plaintiffs have breached the Lease Agreements by not making rent payments during the *Lockdown Period* is, as a matter of law and/or fact, wrong.

## VII.    THIRD CAUSE OF ACTION
### (Breach of Contact – *Lockdown Period* and *Post Lockdown Period*)

224.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 223 of this Complaint as though fully set forth herein.

225.    In accordance with Puerto Rico law, under a lease agreement a lessee is obligated to make payment, while the lessor is bound to, among other things, (1) deliver to the lessee the

thing that is the object of the contract; (2) make, throughout the entire term of the lease, any and all repairs required to maintain same in proper condition to be used for its intended purpose; (3) maintain the lessee in quiet and uninterrupted enjoyment of the lease throughout the entire life of the contract; and (4) execute and deliver to the lessee a receipt for every payment that he makes. (Emphasis added.) Article 1444 of the Civil Code, Laws of P.R. Ann., Tit. 31 § 4051.

226.    The Supreme Court has interpreted Article 1444 of the Civil Code and explained that under this provision "the lessor is liable for any acts on its part, or on the part of others, that disturb the lessee's quiet enjoyment of the leased thing and for any defects in the leased thing that may prevent or hinder such enjoyment." Goneaga v. West Indies Trading Corp. 88 D.P.R. 865, 889 (1963) (Emphasis added.) (*Citing* 4 Castán, Derecho Civil Español [Spanish Civil Law], 8th Ed., 259).

227.    Pursuant to the Lease Agreements, Affiliated Lessors and DDR Palma Real agreed, as an essential obligation thereunder, to guarantee to Plaintiffs the quiet use, possession, and enjoyment of their stores, pursuant to the Quiet Enjoyment clauses.

228.    The Lease Agreements permit, and require, Plaintiffs to use the Leased Premises and operate its retail business in a particular manner. Specifically, the Lease Agreements limit Plaintiffs' permitted use of the Lease Premises to conduct a retail business.

229.    During the *Lockdown Period*, Plaintiffs were prevented from fully operating its retail business at the Leased Premises, which was the principal if not the sole purpose contemplated under the Lease Agreements.

230.    Likewise, during the *Post Lockdown Period*, despite the re-opening of the shopping malls, Plaintiffs were prevented from fully operating its retail business at the Leased Premises, which was the principal if not the sole purpose contemplated under the Lease Agreements.

231.    Plaintiffs have fully performed all of their obligations under the Lease Agreements. Defendants failed to comply with their obligations pursuant to the Quiet Enjoyment clauses for a significant period of time, namely, the *Lockdown Period* – from March 16 to May 31, 2020, and from June 1, 2020 to the present, i.e., the *Post Lockdown Period*.

232.    Affiliated Lessors and DDR Palma Real have therefore materially breached the Lease Agreements, causing Plaintiffs to suffer damages as a direct, proximate, and foreseeable result.

233.    Prior to the events delineated herein, Plaintiffs had fully and completely complied with all of their obligations under the Lease Agreements.

234.    Claims for damages caused by a breach of contract arise under Article 1054 of the Civil Code, 31 L.P.R.A. § 3018, which provides that "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

235.    By reason of the foregoing, Plaintiffs request a judgment in its favor declaring that (i) Affiliated Lessors and DDR Palma Real have breached the Lease Agreements' covenant of quiet enjoyment, which is a violation of an essential obligation, (ii) Plaintiffs are entitled to damages resulting from the material breach, including but not limited to, lost profits, pre-judgment interest, and all foreseeable damages as a direct and proximate result of this breach, which are estimated in an amount of no less than TWO AND A HALF MILLION DOLLARS (US$2,500,000.00); and (iii) as setoff for damages resulting from the breach of contract, Plaintiffs' payment obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused and/or discharged, and also partially abated during the *Post Lockdown Period*.

## VIII.    FOURTH CAUSE OF ACTION
### (Declaratory Judgment, *Exceptio Non Adimpleti Contractus - Lockdown Period*)

236.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 234 of this Complaint as though fully set forth herein.

237.    Affiliated Lessors and DDR Palma Real expect and have demanded that Plaintiffs pay rent for the *Lockdown Period* even though defendants had defaulted in their obligations under the Lease Agreements and pursuant to obligations established in the Puerto Rico Civil Code.

238.    Under the Lease Agreements, both parties—the lessor and the lessee—became reciprocally bound. Articles 1444-45 of the Civil Code, Laws of P.R. Ann., Tit. 31 § 4051-52. Therefore, when the Lease Agreements were executed a bilateral or reciprocal obligation took immediate legal and binding effect.

239.    In accordance with Puerto Rico law, under a lease agreement a lessee is obligated to make payment, while the lessor is bound to, among other things, (1) deliver to the lessee the thing that is the object of the contract; (2) make, throughout the entire term of the lease, any and all repairs required to maintain same in proper condition to be used for its intended purpose; (3) maintain the lessee in **quiet and uninterrupted enjoyment** of the lease throughout the entire life of the contract; and (4) execute and deliver to the lessee a receipt for every payment that he makes. (Emphasis added.) Article 1444 of the Civil Code, Laws of P.R. Ann., Tit. 31 § 4051.

240.    Pursuant to the Lease Agreements, Affiliated Lessors and DDR Palma Real agreed, as an essential obligation thereunder, to guarantee to Plaintiffs the quiet use, possession, and enjoyment of their stores, pursuant to the Quiet Enjoyment clauses.

241.    The Lease Agreements permit, and require, Plaintiffs to use the Leased Premises and operate its retail business in a particular manner. Specifically, the Lease Agreements limit Plaintiffs' permitted use of the Lease Premises to conduct a retail business.

242.     During the *Lockdown Period*, Plaintiffs were prevented from fully operating its retail business at the Leased Premises, which was the principal if not the sole purpose contemplated under the Lease Agreements.

243.     Defendants failed to comply with their obligations pursuant to the Quiet Enjoyment clauses for a significant period of time, namely, the *Lockdown Period* – from March 16 to May 31, 2020.

244.     In response to this breach, Plaintiffs informed Affiliated Lessors and DDR Palma Real that they would not make lease payments during the *Lockdown Period*.

245.     Under Article 1077 of the Civil Code of Puerto Rico, in reciprocal obligations and in cases where obligors do not fulfill what has previously been agreed to the aggrieved party may choose to (1) terminate the obligation, in addition to seeking compensation for damages and interest, or (2) demand performance. *See* Article 1077 of the Civil Code of Puerto Rico, Laws of P.R. Ann., Tit. 31 § 3052.

246.     In principle, if the landlord does not comply with any of his obligations, the tenant may rescind the lease and seek damages, or may just seek damages, leaving the contract in force. However, since a lease imposes bilateral obligations, parties to such contract are subject to the general principle that a party may not seek enforcement of the other party's obligations unless he first complies or agrees to comply with its own obligations. This is known as the doctrine of *exception non adimpleti contractus*. *See* Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 742, 18 P.R. Off. Trans 847 (1987).

247.     Under the doctrine of *exception non adimpleti contractus* defendants' failure to grant Plaintiffs the quiet and uninterrupted enjoyment of the Leased Premises and consequently depriving Plaintiffs of its enjoyment of the Leased Premises as originally contemplated by the

lease agreements – for purposes of a retail business- during the *Lockdown Period* fully abates and/or excuses Plaintiffs' obligations, under the Lease Agreements, including all rent, additional rent and/or other monetary and/or non-monetary obligations.

248.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that: i) payment obligations under the Lease Agreements are fully excused and/or discharged during the *Lockdown Period* under the doctrine of *exception non adimpleti contractus* resulting from Affiliated Lessors and DDR Palma Real's prior breach of the Quiet Enjoyment clauses, and ii) that defendants' claims that Plaintiffs have breached the Lease Agreements by not making rent payments during the *Lockdown Period* is, as a matter of law and/or fact, wrong.

## IX.    FIFTH CAUSE OF ACTION
### (Declaratory Judgment, Impossibility of Performance – *Lockdown Period*)

249.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 248 of this Complaint as though fully set forth herein.

250.    Plaintiffs' ability to operate a retail store at the Leased Premises was the parties' mutual and essential purpose in entering into the Lease Agreements, as both parties understood at the time of contracting, and but for its right to operate such a retail store, Plaintiffs would not have entered into the Lease Agreements.

251.    During the *Lockdown Period*, the COVID-19 pandemic, governmental restrictions, and its societal effects prevented Plaintiffs from fully occupying the Leased Premises and fully operating its business at the Leased Premises which was the principal if not the sole purpose contemplated under the Lease Agreements.

252.    As a direct and proximate result, *inter alia*, of the COVID-19 pandemic, governmental restrictions, and its societal effects performance of Plaintiffs' obligations under the

Lease Agreements during the *Lockdown Period* were rendered impossible, Plaintiffs were not able to use the Lease Premises to operate a retail store as contemplated under the Lease Agreements.

253.    As a result of the foregoing, Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* (including all rent, additional rent and/or other monetary and/or non-monetary obligations) are fully abated and/or excused.

254.    The sudden suspension of retail operations at the Premises was unforeseeable and not contemplated by the parties at the time the Lease Agreements were executed.

255.    The COVID-19 pandemic, governmental restrictions, and its societal effects were not caused by, or by any of Plaintiffs' acts or omissions.

256.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been excused and insist on charging Plaintiffs rent payments corresponding to the *Lockdown Period*. Plaintiff lacks an adequate remedy at law.

257.    The doctrine of impossibility of performance requires the following: 1) that the obligor be exempt from any fault in the failure to comply: (2) that a series of circumstances **beyond the control of the obligor** come up and make the performance impossible; (3) that the things that are the object of the contract cannot be restituted in kind to the party that paid their price, within a reasonable amount of time; and (4) that the obligor did not directly assume the risk of any new circumstances that may prevent performance. Rodríguez v. Municipio, 75 D.P.R. 479, 492 (1953).

258.    In this context, the Supreme Court of Puerto Rico has held that when the impossibility of occurs <u>after</u> the contract was partially signed and executed, the parties are released from any subsequent performance and are bound to restitute the value of any considerations that they have received up until the date of such impossibility. *Id*., on page 493 (*citing* Tulsa Opera

42

House Co. v. Mitchell, 24 P.2d 997, 1001 (Osborn) (1933); Blockdel Realty Co. Inc. v. Doyle, 6 A.2d 670, 671 (1939); Von Waldheim v. Englewood Heights Estates, 179 Atl. 19, 21-22 (1935); Butterfield v. Byron, 27 N.E. 667 (1891); Angus et al. v. Scully, 57 N.E. 674 (1900); Young v. City of Chicopee, 72 N.E. 63, (Hammond), (1904).

259.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring: i) that Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused, and/or discharged as a result of the impossibility of the Lease Agreements; and ii) that defendants' claims that Plaintiffs have breached the Lease Agreements by not making rent payments during the *Lockdown Period* is, as a matter of law and/or fact, wrong.

## X.    SIXTH CAUSE OF ACTION
### (Declaratory Judgment, Frustration of Purpose – *Post Lockdown Period*- Rent Abatement)

260.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 259 of this Complaint as though fully set forth herein.

261.    On June 1, 2020, as a result of Executive Order OE-2020-04, Plaintiffs were permitted to, and did, re-open its retail business at the Leased Premises, but was still subject to many limitations and impediments, strict governmental COVID 19 restrictions and social distancing regulations.

262.    The governmental social distancing regulations have the effect of reducing the amount of floor space available for use to conducting business with potential retail customers.

263.    Since June 1, 2020, Plaintiffs have no longer been able to make full use of the entirety of the retail space at the Leased Premises to conduct its business in a manner consistent with the parties' fundamental understanding, purpose, and expectation at the time the Lease Agreements were entered.

264.    Governmental social distancing restrictions on retail, entertainment, public transportation, and indoor spaces have also resulted in a dramatic decrease in the number of visitors to the shopping centers where the Leased Premises are located.

265.    The COVID-19 pandemic, governmental restrictions, and societal effects have also had a commensurate reduction in Plaintiffs' sales at the Leased Premises.

266.    The COVID-19 pandemic, governmental restrictions, and societal effects and resulting economic ramifications were unforeseeable and not contemplated by the parties at the time the Lease Agreements were executed.

267.    The COVID-19 pandemic, governmental restrictions, and societal effects, and resulting economic ramifications therefrom, were not caused by, or by any of Plaintiffs' acts or omissions.

268.    For the foreseeable future governmental restrictions due to COVID-19 will continue to impose a reduction in the amount of customer foot traffic that is permitted to pass through the Leased Premises.

269.    The unforeseeable effects of the COVID-19 pandemic have frustrated the purpose of the Lease Agreements, which is to allow Plaintiffs to fully utilize the entirety of the Leased Premises as a place for conducting retail business and for no other purpose.

270.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been excused or should be abated. Plaintiffs' lacks an adequate remedy at law.

271.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that: i) payment obligations under the Lease Agreements are abated, starting from June 1, 2020 –

the *Post Lockdown Period* -- until such time as it is able to fully occupy the Leased Premises and resume its business, as originally contemplated by the Lease Agreements.[4]

## XI.    SEVENTH CAUSE OF ACTION
### (Declaratory Judgment, Partial Failure of Consideration – *Post Lockdown Period*- Rent Abatement)

272.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 271 of this Complaint as though fully set forth herein.

273.    On June 1, 2020, as a result of Executive Order OE-2020-04, Plaintiffs were permitted to, and did, re-open its retail business at the Leased Premises, but was still subject to significant limitations and impediments, strict governmental COVID 19 restrictions and social distancing regulations.

274.    The governmental social distancing regulations have the effect of reducing the amount of floor space available for use to conducting business with potential retail customers.

275.    Pursuant to the Lease Agreements, defendants agreed, as an essential obligation thereunder, to guarantee to Plaintiffs the quiet use, possession, and enjoyment of the totality of the Leased Premises for the purpose of conducting a retail business.

276.    Since June 1, 2020, Plaintiffs have no longer been able to make full use of the entirety of the retail space at the Leased Premises to conduct its business in a manner consistent with the parties' fundamental understanding, purpose, and expectation at the time the Lease Agreements were executed.

277.    Plaintiffs are prevented from fully occupying the Leased Premises and fully operating its business at the Lease Premises, as originally contemplated under the lease

---

[4] Plaintiffs proposed an alternate rent formula for the *Post Lockdown Period*, which is hereby submitted to the consideration of the Court, based on the payment of a rental rate proportionate to current sales. *See* **Exhibit A.**

agreements. Contrary to the Lease Agreements Plaintiffs now have limited available space that Plaintiffs can use to derive sales, and commercially exploit the retail store.

278.    This change in circumstances was not caused by Plaintiffs' actions or omissions and reveal an unjust and unreasonable disproportion between the considerations of the Lease Agreements resulting in a contractual inequity.

279.    Affiliated Lessors and DDR Palma Real have failed to deliver a portion of their promised performance under the Lease Agreements.

280.    Plaintiffs agreed to pay monetary obligations established in the Lease Agreements in the expectation that it would be able to fully use, occupy and operate the Leased Premises for its retail business, this expectation was a fundamental consideration for the rent payments.

281.    Plaintiffs' use and enjoyment of the Leased Premises has been significantly undermined during the *Post Lockdown Period*, contrary to the terms of the Lease Agreements.

282.    Affiliated Lessors partial failure of performance excuses Plaintiffs from its monetary obligations under the Lease Agreements justifying an abatement in rental payments during the *Post Lockdown Period.*

283.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been excused or should be abated. Plaintiffs' lacks an adequate remedy at law.

284.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that that there was a partial failure of consideration in this case and thus i) payment obligations under the Lease Agreements are abated, starting from June 1, 2020 – the *Post Lockdown Period* - - until such time as use and enjoyment of the Leased Premises is no longer undermined by the limitations and restrictions imposed as a result of the COVID-19 pandemic and Plaintiff is able to

operate its business as both parties had projected at the time that the parties executed the Lease Agreements. [5]

## XII.    EIGHTH CAUSE OF ACTION
### (Declaratory Judgment, *Rebus Sic Stantibus – Post Lockdown Period* - Rent Abatement)

285.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 284 of this Complaint as though fully set forth herein.

286.    Ordinarily in Puerto Rico, "[c]ontracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law". Article 1210 of the Civil Code of Puerto Rico, Laws of P.R. Ann., Tit. 31 § 3375.  Nevertheless, pursuant to the principle of equity, the *rebus sic stantibus* clause counterbalances the inflexibility and severity of the principle of *pacta sunt servanda* allowing courts to intervene with contracts if good faith would be infringed or an injustice would be produced, if the contract is strictly enforced. BPPR v. Sunc. Talavera, 174 D.P.R. 686, 695 (2008).

287.    The doctrine of *rebus sic stantibus* is based on certain premises latent in the general theory of obligations and contracts, namely: good faith, contractual injury, unjust enrichment, encroachment of rights, and contractual equity. Casera Foods, Inc. v. E.L.A., 108 D.P.R. 850, 8 P.R. Offic. Trans. 914, 919 (1979)

288.    The *rebus sic stantibus* clause has been applied in situations where the lack of balance between the considerations caused by extraordinary and unforeseeable changes in the status of the facts, subsequent to the execution of an agreement, reaches dimensions of bad faith,

---

[5] *See* fn. 2 and rent payment model attached to and made a part of this Complaint as **Exhibit B.**

injures the principle of voluntariness, and/or renders the performance excessively onerous for one of the parties." <u>BPPR v. Sunc.Talavera,</u> 108 D.P.R. at 706.

289.    Particularly, Puerto Rico's rule of law permits the judicial modification of a contract when the following conditions are present: (1) the event that arises must be unpredictable; (2) the performance of the contract must turn out to be extremely difficult or onerous, and consequently constitute for the debtor an injury that is disproportionate to the advantage that the debtor was expected to receive under the contract; (3) the parties cannot have based themselves on an aleatory or purely speculative contract to somewhat foresee the possibility of the event; (4) there cannot be fraud [dolus] on the part of any party, because the effects of supposed crimes and quasi-crimes are specifically predetermined by law; (5) the contract must be of continuing performance or refer to a future time; (6) the circumstances need to have been altered after the contract was executed (as this is required by the very nature of an unforeseeable event) and must be of a somewhat permanent nature (an element that is also required by the extraordinary nature required for alteration); and (7) there must be a request by a party of interest. *See* <u>Casera Foods, Inc. v. E.L.A.,</u> 8 P.R. Offic. Trans. at 920-921

290.    The Supreme Court has held that a contract can be subject to judicial review even in cases where the seven (7) mentioned requirements are not met under the principles of good faith and equity. *See* <u>Oriental Bank v. Perapi</u>, 192 D.P.R. 7, 13 (2014).

291.    On June 1, 2020, as a result of Executive Order OE-2020-04, Plaintiffs were allowed to, and did, re-open its retail business at the Leased Premises, but was still subject to numerous limitations and impediments, strict governmental COVID 19 restrictions and social distancing regulations.

292.    The governmental social distancing regulations have the effect of reducing the amount of floor space available for use to conducting business with potential retail customers.

293.    Governmental social distancing restrictions on retail, entertainment, public transportation, and indoor spaces have also resulted in a dramatic decrease in the number of visitors to the shopping centers where the Leased Premises are located.

294.    COVID-19, governmental restrictions and its societal effects resulted in an unforeseeable and industry-altering contraction in the retail market.

295.    The unforeseeable effects of the COVID-19 pandemic *Post Lockdown Period* have significantly decreased Plaintiffs' sales derived from the Leased Premises fluctuating between an 18% and in the most extreme cases 60% less, compared to sales for the same period during year 2019.

296.    Sales during the *Post Lockdown Period* are significantly less than those expected and projected at the time the Lease Agreements were negotiated and executed.

297.    The COVID-19 pandemic, governmental restrictions, societal effects, and its economic ramifications were unforeseeable and not contemplated by the parties at the time the Lease Agreements were executed.

298.    There is great uncertainty as to when, and if, governmental restrictions due to COVID-19 and social distancing guidelines will be lifted.

299.    For the foreseeable future governmental restrictions due to COVID-19 will continue to impose a reduction in the amount of customer foot traffic that is permitted to pass through the Leased Premises.

300.    The unforeseeable effects of the COVID-19 pandemic have undermined the value of the leasehold causing a disproportion between the reasonable current value of the use of the Leased Premises and rent payments contemplated in the Lease Agreements.

301.    At the time the Lease Agreements were executed the shopping centers where the Leased Premises are located were a solidly trafficked area justifying the rent agreed upon in the Lease Agreements.

302.    This change in circumstances cause by the COVID-19 pandemic, government restrictions, and societal effects -- not caused by Plaintiffs' actions or omissions -- reveal an unjust and unreasonable disproportion between the considerations of the Lease Agreements resulting in a contractual inequity.

303.    Plaintiffs have made good faith attempts to reach an agreement to establish a monthly rent reflecting the conditions of the current market, which is radically different from the conditions existing when the Lease Agreements were executed.  Defendants have refused to grant any rent relief to Plaintiffs.

304.    Considering the change in circumstances, payment of rents established in the Lease Agreements is extremely onerous and violates the principles of equity and contractual good faith.

305.    By reason of the foregoing, Plaintiffs request a judgment in their favor declaring that: i) payment obligations under the Lease Agreements must be modified and abated, starting from June 1, 2020 – the *Post Lockdown Period* -- until such time as use and enjoyment of the Leased Premises is no longer undermined by the limitations and restrictions imposed as a result of the COVID-19 pandemic and Plaintiffs are able to operate their business as the parties had projected at the time that the parties executed the Lease Agreements.

## XIII.  NINTH CAUSE OF ACTION
### (Declaratory Judgment, Fortuitous Event Or Force Majeure – *Lockdown Period and Post Lockdown Period*)

306.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 305 of this Complaint as though fully set forth herein.

307.    The Civil Code of Puerto Rico establishes that "nobody shall be liable for events that could not have been foreseen, or events that, if foreseen, were inevitable," unless otherwise specifically provided by law or in the contract. Article 1058 of the Civil Code of Puerto Rico, Laws of P.R. Ann., Tit. 31 § 3022. This provision contains the fortuitous event or force majeure doctrine, which contemplates two types of events or acts: (1) those that cannot be foreseen; or (2) those that can be foreseen but cannot be avoided. *See* Rivera v. Caribbean Home Construction, 100 D.P.R. 106 (1971).

308.    The requirements for determining whether an event is fortuitous are: (a) that the action or occurrence that triggered the event did not depend on the intent of the one called to serve and is not attributable to him because the event resulted from a *fatum fatalitas* accident; (b) the event must be unforeseen or inevitable in the sense that it is beyond the usual, reasonable diligence of the obligor, and (c) the nonperformance must presuppose impossibility, not mere difficulty. Porto Rican and American Insurance Company v. Humberto Duran Manzanal, 92 D.P.R. 289 (1965).  All these elements are present here.

309.    Although the Supreme Court of Puerto Rico has not specifically ruled whether an island wide shelter-in-place order and mandatory quarantine due to a global pandemic is a foreseeable event or an event that, though foreseeable, is inevitable, pandemics unquestionably constitute suppositions of a fortuitous event or force majeure. *See*, *i.e.*, F. Oliver & Co., S. en C., v. Díaz & Pérez, S. en C., 28 D.P.R. 708 (1920) (putting earthquakes and the Spanish flu epidemic

on a level with fortuitous cases); Op. Sec. Just. 1982-12, 1982 WL 896103 (including epidemics among fortuitous or force majeure cases due to acts of God.)

310.    The COVID-19 pandemic, governmental restrictions, societal effects, and resulting economic ramifications were unforeseeable and not contemplated by the parties at the time the Lease Agreements were executed.

311.    The economic ramifications resulting from the COVID-19 pandemic are not the result of internal market forces or manipulations that contracting parties should perhaps expect from time to time. The COVID-19 pandemic's impact, killing both people and businesses, has been extraordinarily severe and unforeseeable.

312.    The COVID-19 pandemic, governmental restrictions, and societal effects, and the resulting economic ramifications therefrom, were not caused by, or by any of Plaintiffs' acts or omissions.

313.    Given that the apparel and accessories retail market has been severely affected because of the COVID-19 pandemic, governmental restrictions and societal effects it is impossible and unreasonable to continue operating under the same conditions agreed upon at the time the Lease Agreements were executed.

314.    An actual case and justiciable controversy exist since the Affiliated Lessors and DDR Palma Real dispute that Plaintiffs' obligations under the Lease Agreements have been excused or should be abated. Plaintiffs' lacks an adequate remedy at law.

315.    By reason of the foregoing, Plaintiffs requests a judgment in its favor declaring that under Art. 1058 of the Civil Code of Puerto Rico, Laws of P.R. Ann., Tit. 31 § 302: i) Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully excused, and/or discharged; and ii) payment obligations under the Lease Agreements are abated, starting from June

1, 2020 – the *Post Lockdown Period* - until such time as it is able to fully occupy the Leased Premises and resume its business, as originally contemplated by the Lease Agreements.

## XIV.   TENTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealings)

316.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 315 of this Complaint as though fully set forth herein.

317.    Puerto Rico law implies a covenant of good faith and fair dealings in all contracts entered into by the parties when Puerto Rico law is applicable to any dispute arising thereunder. 31 P.R. Law. Ann. §§ 2994 and 3375.

318.    Affiliated Lessors and DRR Palma Real material breach of the Lease Agreements by failing to maintain Plaintiffs in quiet use and enjoyment of the Leased Premises for them to provide retail store services during the *Lockdown Period*; and refusing *any* rent relief or abatement for the *Post Lockdown Period,* despite only partially fulfilling its obligation under the Lease Agreements and considering the change in circumstances caused by the COVID-19 pandemic, government restrictions, and societal effects, constitute a breach of the covenants of good faith and fair dealings.

319.    As a direct and proximate result of Affiliated Lessors and DDR Palma Real's breach of the duty of good faith and fair dealings, Plaintiffs are entitled to a declaration that: Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused, suspended and/or discharged; and ii) payment obligations under the Lease Agreements are abated, starting from June 1, 2020 – the *Post Lockdown Period* - until such time as it is able to fully occupy the Leased Premises and resume its business, as originally contemplated by the Lease Agreements.

## XV.    ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

320.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 319 of this Complaint as though fully set forth herein.

321.    Plaintiffs have previously paid rent and other consideration to the Affiliated Lessors and DDR Palma Real for a period of time that Plaintiffs were unable to operate a retail store at the Leased Premises – from March 16, 2020 to March 30, 2020.

322.    Plaintiffs, for the reasons above stated, had no contractual and/or legal obligation to pay rent to defendants during the *Lockdown Period*.  Its payment obligations were fully excused, abated and/or discharged.

323.    Defendants were enriched, without cause, as a result of these payments, at Plaintiffs' expense.

324.    Under principles of good conscience, Affiliated Lessors should not be allowed to retain the rent and other consideration paid for the period of time that Plaintiffs were unable to operate a retail store at the Leased Premises as originally contemplated by the Lease Agreements.

325.    Plaintiffs are entitled to a judgment in their favor equal to the sums that Plaintiffs have overpaid as rent and as other consideration to the Affiliated Lessors in an amount no less of $56,910.45, for the period of time that Plaintiffs were unable to operate a retail store at the Leased Premises, March 16, 2020 to March 30, 2020.

## XVI.   TWELFTH CAUSE OF ACTION
### (Restitution – Rent Paid – *Lockdown Period*)

326.    Plaintiffs repeats and realleges the averments set forth in paragraphs 1 through 325 of this Complaint as though fully set forth herein.

327.    As mentioned above, Plaintiffs paid rent for the entire month of March 2020, yet, beginning on March 15, Plaintiffs were deprived of the use of the Leased Premises as originally contemplated by the Lease Agreements.

328.    Accordingly, Plaintiffs are entitled to the reimbursement or restitution of the sums that Plaintiffs have previously paid as rent and as other consideration to the Affiliated Lessors and DDR Palma Real. Plaintiffs hereby petition this Honorable Court to order the Affiliated Lessors and DDR Palma Real to pay, restitute and/or reimburse all amounts paid for rent during the month of March, which amount to be no less than $56,910.45, plus interest.

## XVII.   THIRTEENTH CAUSE OF ACTION
### (Declaratory Judgment, Breach of Contract – Tenant Allowance)

329.    Plaintiffs repeat and reallege the averments set forth in paragraphs 1 through 328 of this Complaint as though fully set forth herein.

330.    Article VI(F) of the Lease Agreement/Novus Palma Real includes a Construction Allowance for Tenant's Work clause establishing that "provided tenant is not in default […] [DDR Palma Real] shall reimburse [Novus] for a portion of the costs of Tenant's Work […] within the Premises [….] [Novus'] allowance shall be equal to the lesser of (i)$100,000.00 or (ii) the actual cost incurred by Tenant to Complete Tenant's Work." Per the Lease Agreement this is referred to as Tenants' Allowance.

331.    On November 10, 2020 Retail Value, Inc. ("RVI") on behalf of DDR Palma Real sent a letter to Novus enclosing a copy of a check for an amount of $28,181.82 and a check for $71,818.18 for a total of $100,000.00 by concept of Tenant's Allowance.  The letter informed Novus that the check for $28,181.82 was "forwarded to [RVIs] accounting department to be applied to [the] oldest open charges".

332.    On December 22, 2020 Novus responded by letter rejecting any purported open charges or delinquent amounts granting RVI the right to offset against the Tenant's Allowance under Article VI(F) of the Lease Agreement/ Novus Palma Real. And, requesting said amount to be delivered in full to Plaintiff in accordance with Article VI(F) of the Lease Agreement/Novus Palma Real.

333.    Plaintiffs' monetary obligations under the Lease Agreements for the months comprising the *Lockdown Period* are fully abated, excused, and/or discharged.

334.    As for the *Post Lockdown Period*, payment obligations under the Lease Agreements warrant an adjustment until such time as Plaintiffs are able to operate their business as both parties had projected at the time that the parties executed the lease agreements.

335.    Since June 2020 Plaintiffs' have made monthly payments to Affiliated Lessors including DDR Palma Real using the rent rate model shown in **Exhibit A**, which reasonably reflects the value of the leasehold and accommodates the new reality and the unforeseeable change in circumstances.

336.    In accordance to the claims and civil remedies raised in the instant Complaint Plaintiffs are not in default; thus,  RVI and DDR Palma Real actions constitue an improper witholding of funds and a breach of the Construction Allowance Clause pursuant to Article VI(F) of the Lease Agreement/ Novus Palma Real.

337.    Consequently, Novus requests a declaration that defendant DDR Palma Real's action of withholding the $28,181.82 of tenant's allowance is a breach of the Article VI(F) of the Lease Agreement/Novus Palma Real and, consequently, that Novus is entitled to the payment and/or reimbursement or restitution of such amount, plus interest.

**WHEREFORE**, Plaintiffs respectfully request this Honorable Court to enter judgment against defendants Affiliated Lessors and DDR Palma Real as follows:

1. On the First Cause of Action, a declaration from this Court that during the *Lockdown Period* the purpose of the Lease Agreements was frustrated, and Plaintiffs' obligations under the Lease Agreements are fully excused, and/or discharged during said period;

2. On the Second Cause of Action, a declaration from this Court that Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused, and/or discharged based on failure of consideration;

3. On the Third Cause of Action, a declaration from this Court that (i) Affiliated Lessors and DDR Palma Real breached the Lease Agreements' covenant of quiet enjoyment, (ii) Plaintiffs are entitled to damages resulting from the breach, including lost profits, pre-judgment interest, and all foreseeable damages, which are estimated in an amount of no less than TWO AND A HALF MILLION DOLLARS (US$2,500,000.00), and ordering defendants to indemnify Plaintiffs and pay those recoverable damages; and (iii) as setoff for damages resulting from the breach of contract Plaintiffs' payment obligations under the Lease Agreements for the *Lockdown Period* are fully excused and/or discharged;

4. On the Fourth Cause of Action, a declaration from this Court that Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused, and/or discharged based on defendants' prior breach of the Lease Agreements under the doctrine of *exception non adimpleti contractus;*

5. On the Fifth Cause of Action, a declaration from this Court that Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* were rendered impossible, and that all of Plaintiffs' obligations memorialized therein are fully abated, excused, and/or discharged during said period;

6. On the Sixth and Seventh Cause of Action, a declaration that Plaintiff's payment obligations under the Lease Agreements are abated, starting from June 1, 2020 – the *Post Lockdown Period* - until such time as Plaintiffs are able to operate their business as both parties had projected at the time that the parties executed the Lease Agreements;

7. On the Eighth Cause of Action, a declaration that under the doctrine of *rebus sic stantibus* Plaintiffs' payment obligations under the Lease Agreements are abated, starting from June 1, 2020 – the *Post Lockdown Period* - until such time as Plaintiffs are able to operate their business as both parties had projected at the time that the parties executed the Lease Agreements;

8. On the Ninth Cause of Action, a declaration that under Article 1058 of the Civil Code of Puerto Rico, Laws of P.R. Ann., Tit. 31 § 3022, i) Plaintiffs' obligations under the Lease Agreements during the *Lockdown Period* are fully abated, excused, and/or discharged; and ii) payment obligations under the Lease Agreements are abated, starting from June 1, 2020

– the *Post Lockdown Period* -- until such time as Plaintiffs are able to operate their business as both parties had projected at the time that the parties executed the lease agreements;

9.  On the Tenth Cause of Action, a declaration that Affiliated Lessors and DDR Palma Real has breached the covenant of good faith and fair dealings upon their failure comply with the Lease Agreements' covenant of quiet enjoyment clauses, and failure to modify rent rates;

10. On the Eleventh and Twelfth Cause of Action, ordering Affiliated Lessors and DDR Palma Real to reimburse and give restitution to Plaintiffs for the payment of rent and other expenses paid for the period that Plaintiffs were deprived of its use of the Leased Premises as originally contemplated by the Lease Agreement in amount of no less than $56,910.45, plus interest;

11. On the Thirteenth Cause of Action, a declaration that defendant DDR Palma Real's action of withholding the $28,181.82 of tenant's allowance is a breach of the Article VI(F) of the Lease Agreement/Novus Palma Real, and ordering the payment, restitution, or reimbursement of such sums to co-plaintiff Novus; and

12. Granting any other and further relief in favor of the Plaintiffs that this Court may deem just and proper under the law and/or in equity, including taxing defendants with all costs and a reasonable amount of attorney's fees.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 24th day of March of 2021.

   **IT IS HEREBY CERTIFIED**, that on this same date a true and exact copy of the foregoing *Amended Complaint* was filed electronically with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to all attorneys of record.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, PSC**
*Counsel for Plaintiffs*
P.O. Box 70294
San Juan, Puerto Rico 00936-8294
Tel.:  787.756.9000
Fax:  787.756.9010

/s/Eric Pérez-Ochoa
USDC-PR No. 206314

/s/Alexandra C. Casellas
USDC-PR No. 301010

s/Glorimar Irene-Abel
USDC-PR No. 307504